IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| WINDELL ROBINSON | § | |
|---|---|---|
| VS. | § | CIVIL ACTION NO. 6:08cv171 |
| RONNIE BROWNLOW, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Windell Robinson, previously a prisoner confined at the Henderson County Jail, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The Defendants are Sheriff Ronnie Brownlow, Dr. Kenneth P. Lemmon and Nurse Sandy Murphee. The case was referred to the undersigned by consent of the parties pursuant to 28 U.S.C. § 636(c).

History of the Case

The original complaint was filed on April 25, 2008. The Plaintiff complained about the medical care he received for urinary problems. On July 18, 2008, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. On July 23, 2008, a Report and Recommendation was issued with the conclusion that the lawsuit should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). The Plaintiff filed objections on August 4, 2008. Before United States District Judge Leonard Davis, the presiding judge, had the chance to rule on the objections, the Plaintiff filed a notice of appeal. While the case was on appeal, the parties consented to the undersigned being the presiding judge pursuant to 28 U.S.C. § 636(c). On October 7, 2008, the Fifth Circuit dismissed the appeal for lack of jurisdiction. The

1

present memorandum opinion will repeat the facts of the case and discussion and analysis found in the Report and Recommendation and then address the Plaintiff's objections.

Facts of the Case

The Plaintiff's medical problem began when he observed bleeding from his penis on January 15, 2008. He first noticed the problem because of blood on his boxer shorts. He submitted a sick call request. A doctor's appointment was set for January 22, 2008, but the doctor did not show up. Another appointment was scheduled for February 6, 2008. Once again, the doctor did not show up. The Plaintiff finally saw the doctor on February 12, 2008. The Plaintiff was prescribed Doxycycline, an antibiotic. He was provided twenty pills for a ten day period of time. The pills did not stop the bleeding. He went back to the doctor for the same problem around April 15, 2008. Dr. Lemmon prescribed Doxycycline once again. The Plaintiff questioned the use of this prescription noting that it had not previously stopped the bleeding. The Plaintiff did not take all of the pills because they did not stop the problem. He took about ten of the twenty pills. Security personnel confiscated the remainder of the prescription. The Plaintiff testified that Dr. Lemmon told him that his area of specialization was family medicine and that he would be sent to a urologist. The Plaintiff was scheduled to see a urologist on June 23, 2008, but he was released on that day and was not taken to the doctor. The Plaintiff personally obtained an appointment for July 18, 2008, but it had to be rescheduled because of the hearing in this case.

The Plaintiff testified that he submitted seven or eight requests for medical care concerning the bleeding. The Court notes that copies of three of the requests were attached to the original complaint. Copies of grievances were also submitted on June 2, 2008. *See* docket entry #16. He testified that he believes that any bleeding is serious and he should have been taken to the hospital the first time he reported bleeding. Nurse Murphee told him that he would have to first see Dr. Lemmon.

The Plaintiff testified that he sued Sheriff Brownlow because he is responsible for the jail and had the duty to make sure that there was a sufficient number of medical people employed to provide for his medical needs. With respect to Dr. Lemmon, the Plaintiff testified that Dr. Lemmon was probably a good doctor but his area of expertise was family medicine, not urology. He also noted that when he told medical personnel that he received tinter for syphilis, he received a response that made it appear that they did not know what he was talking about. The Plaintiff testified that Nurse Murphee ignored his request forms and that all of the nurses during the day became scarce after he filed complaints. He acknowledged that Nurse Murphee arranged his doctor's appointments. The Plaintiff stated that he believes that medical personnel deliberately ignored his problems, possibly due to a lack of money.

When questioned by the Defendants, the Plaintiff testified that he was booked into the jail on November 27, 2007, and released on June 23, 2008. He admitted that he never talked to Sheriff Brownlow. He did not know whether Sheriff Brownlow knew about his complaints, but he believes that Sheriff Brownlow should have known about them. He acknowledged that he did not have any factual basis for his assertion that cost may have been a factor, however, he had received extensive medication for other problems. He thought that jail personnel may have thought that they had spent enough money on him. He acknowledged that he was sent to the hospital for another problem and to the clinic next to the hospital. The Plaintiff acknowledged that he saw Dr. Lemmon and Nurse Murphee on several occasions. He argued that the medical care provided at the jail was insufficient. He added that he never had bleeding problems before he entered the jail.

Nurse Sandy Murphee testified from the Plaintiff's jail medical records. A copy of the records were admitted into evidence with the consent of the Plaintiff. The records reveal that the Plaintiff submitted his first medical request concerning bleeding on January 15, 2008. The Plaintiff was

scheduled to see the doctor. She testified that she did not believe that spotting blood was a life threatening situation, but it should be watched. The Plaintiff submitted another request about bleeding on January 22, 2008. He was scheduled to see the doctor. The Plaintiff saw Dr. Lemmon on the following day and was prescribed Doxycycline. The Plaintiff was scheduled to have a urinalysis.

When questioned by the Plaintiff, Nurse Murphee testified that the response to the first medical request specified that he was being scheduled to see the doctor and that he should notify medical personnel if the bleeding became worse. She never saw enough bleeding to lead her to believe that the Plaintiff needed to be sent to the hospital. She thought that sending him to the hospital would have been appropriate if the bleeding had become severe.

Dr. Kenneth Lemmon testified that he is board certified in family practice medicine. He refers inmate patients to specialists when it appears necessary. He examined the Plaintiff for complaints about blood in his urine on January 25, 2008. A genital and prostate exam were normal. He ordered a complete metabolic profile, which was likewise normal. The Plaintiff's PSA, which is a prostate test, was normal. Dr. Lemmon prescribed Doxycycline since it covers a wide array of urinary problems. Nonetheless, the Plaintiff was seen again for bleeding on April 8, 2008. An exam showed everything was normal. A urinalysis was conducted, which was normal. Dr. Lemmon testified that it was his opinion at the time that the situation should be watched. On May 27, 2008, the Plaintiff was examined for a nodule on his penis. The exam was normal. There was no bleeding. Dr. Lemmon once again concluded that they should watch and wait. Dr. Lemmon testified that he did not know what was causing the bleeding. Doxycycline was prescribed because it covers a wide array of problems. He never saw any bleeding during the times he saw the Plaintiff. He noted that there are times when doctors simply do not have an answer for a patient. He did not see anything else that could be done. He testified that costs were not a factor in providing medical care.

When questioned by the Plaintiff, Dr. Lemmon testified that he specializes in family medicine, but he can handle other medical areas. He uses common sense in determining when to refer a patient to a specialist. He will also consider a specialist to get another opinion. When told that the nodule on his penis had grown to the size of a marble, Dr. Lemmons testified that he does not know the reason for the growth. He finally testified that he does not recall the Plaintiff asking him if he wanted to see his bloody shorts.

## Discussion and Analysis

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. *See also Reeves v. Collins*, 27 F.3d 174, 175 (5th Cir. 1994). The Fifth Circuit has held that the deliberate indifference standard applies with respect to medical or safety claims by pretrial detainees. *Hare v. City of Corinth*, 74 F.3d 633, 647 (5th Cir. 1996).

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton

5

disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001). Unsuccessful medical treatment does not give rise to a civil rights action. *Johnson v. Treen*, 759 F.2d at 1238. Allegations of inadequate medical treatment likewise does not amount to a violation of federal rights. *See Estelle v. Gamble*, 429 U.S. at 107; *Jackson v. Cain*, 864 F.2d at 1244; *Johnson v. Treen*, 759 F.2d at 1238. A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

The facts as alleged and developed reveal that the Defendants were responsive to the Plaintiff's urinary problems. Nurse Murphee scheduled the Plaintiff for an appointment with the doctor as soon as she became aware of the problem. She did not ignore his problem. Dr. Lemmon prescribed Doxycycline, an antibiotic that covers a wide array of urinary problems, when he initially examined the Plaintiff. He also scheduled a number of tests, which came back normal. Neither Nurse Murphee nor Dr. Lemmon believed that the amount of bleeding involved was serious enough to send the Plaintiff to the hospital, although he was scheduled to see a urologist. The Plaintiff was released before he saw the urologist. The Defendants did not ignore the Plaintiff's problems. They provided care that they thought was appropriate. They were not deliberately indifferent. The Plaintiff does not have a basis for a potentially meritorious civil rights lawsuit just because the problem was not cured or because he thought that the care provided was inadequate. In the Report and Recommendation, the Court concluded that the facts as alleged fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact, thus the lawsuit should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Report and Recommendation further noted that the claims against Sheriff Ronnie Brownlow should be dismissed for one additional reason. In order to successfully plead a cause of action in a civil rights case, a plaintiff normally must enunciate a set of facts that illustrate the defendants' participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Sheriff Brownlow was not personally involved in the medical decisions involving the Plaintiff. He was sued because he was responsible for the jail as sheriff, but the doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. The Plaintiff has not shown that Sheriff Brownlow had a policy or custom to deny him medical care. Medical care was provided by licensed medical personnel. The Plaintiff has not shown that Sheriff Brownlow should be liable in his capacity as sheriff.

## Objections

The Plaintiff began his objections by asserting that the Defendants were negligent in providing care for Syphilis. He went to the Kaufman Community Health Center after his release from jail. He was immediately scheduled to see a urologist. On July 21, 2008, Dr. Ellfarr diagnosed him as having Hematuria and Peyronie's Disease. A nurse also took a urine sample. On the following day, he was called back to the Kaufman Community Health Center because he had a full blown case of Syphilis. On July 28, 2008, he went to East Texas Medical Center for an ultrasound on his kidneys and bladder. He started receiving penicillin shots for Syphilis on July 29, 2008. He asserted that the jail medical staff had more than enough time to diagnose his medical problems. He cited *Estelle v. Gamble*, *supra*, for the proposition that the Defendants were deliberately indifferent to his serious medical needs.

The Court again notes that the definition of deliberate indifference was developed by the Supreme Court in *Farmer v. Brennan*, *supra*. The Supreme Court held that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." 511 U.S. at 837. The Defendants were responsive to the Plaintiff's serious medical needs. He was scheduled for a number of tests, which came back normal. Dr. Lemmon prescribed Doxycycline, an antibiotic that covers a wide array of urinary problems. He was scheduled to see a urologist, but he was released before he went to the appointment. The Defendants did not ignore his medical problems. The Plaintiff's objections discussed the medical care he received after his release. His objections at best show that the Defendants misdiagnosed his condition, but an incorrect diagnosis does not suffice to state a claim for deliberate indifference. *Domino v. Texas Department of Criminal Justice*, 239 F.3d at 756; *Johnson v. Treen*, 759 F.3d at 1238. Instead, the Plaintiff must show that the Defendants engaged in "conduct that would clearly evince a wanton disregard for serious medical needs." *Johnson v. Treen*, 759 F.3d at 1238. The facts as alleged and developed do not show that the Defendants had the requisite state of mind to hold them liable in a § 1983 lawsuit. The Plaintiff's objections do not show that the Defendants were deliberately indifferent.

## Conclusion

The facts as alleged and developed fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The lawsuit should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is accordingly

**ORDERED** that the complaint is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). It is finally

**ORDERED** that all motions not previously ruled on are **DENIED**.

**So ORDERED and SIGNED this 21st day of October, 2008.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE